WILKINSON (HALE v.). See Case No. 5,-917.

WILKINSON (HAYTON v.). See Case No. 6.272.

WILKINSON (MANN v.). See Case No. 9,-036.

# Case No. 17,673.

WILKINSON et al. v. NICKLIN et al.

[2 Dall. 396.]

Circuit Court, D. Pennsylvania. 1798.

BILLS OF EXCHANGE—INDORSEMENT IN BLANK.

[The blank indorsement of a bill of exchange passes all the interest therein to every indorsee in succession, and, even in the hands of one who takes it after it is noted on its face for nonacceptance, it is discharged from any obligation which might exist between the original parties, but which does not appear upon the face of the instrument itself.]

This was an action brought by the indorsees of a bill of exchange, drawn by McClenachan and Moore, upon George Barclay, of London, in favor of the defendants, and by them indorsed in blank, to Arthur Crammond & Co., who, likewise, indorsed and discounted them with their bankers, the present plaintiffs, under the following circumstances: The defendants, having opened a commercial correspondence with Arthur Crammond & Co., of London, remitted the bill of exchange in question, to be passed to their credit, in their general account with those gentlemen. The bill was noted on the face of it for nonacceptance. It was afterwards, on the 4th of August, 1796, paid in short, on account of Arthur Crammond & Co., with their blank indorsement, to the banking house of the plaintiffs; but, on the 19th of the

same month, the amount was carried out to the credit of Arthur Crammond & Co. as if it had been then discounted by the plaintiffs; and it was said by a witness examined under a commission, that, after this discount, the money had been duly paid upon the drafts of Arthur Crammond & Co.

The counsel for defendants stated that they proposed to show by evidence that the bill of exchange was remitted on account of the defendants, and that Arthur Crammond & Co. were in very great pecuniary embarrassments, at the time of the alleged discount of the bill of exchange, and had soon afterwards become bankrupt. From these premises, from the nature of the previous deposit, and, above all, from the dishonored state of the bill, when it was deposited and discounted (which was enough to have prompted an enquiry into the real circumstances of the case), it was intended to argue that the plaintiffs knew that the bill was, in fact, the property of the defendants, and that the eventual discount was colorable and collusive, for the mere purpose of recovering the damages, or of securing a pre-existing balance due to the plaintiffs from Arthur Crammond & Co., who were on the eve of a public failure. 3 Term R. 80. If the plaintiffs did not know the facts they cannot be entitled to any more benefits from the possession of the bills than Arthur Crammond & Co. themselves.

The counsel for plaintiffs (who had, indeed, anticipated the defence in their opening) insisted that the general, unrestricted nature of the indorsement had empowered Arthur Crammond & Co. to pass the bill to whomsoever they pleased, and that, whatever might be the imputation on them for a breach of trust, it could not affect the plaintiffs, who had paid a valuable consideration for the bill, and who ought not to be charged with collusion and fraud upon strained inferences and slight presumptions. Their knowledge of the transactions between the defendants and Arthur Crammond & Co. has not been proved; and it would be a violation of the most important commercial principles, of the most authoritative adjudications, to permit such a defense to be made against the claim of an indorsee. The distinction between restricted indorsements, and indorsements which leave the bill to a free negotiation, has been fully established (2 Burrows, 1216, 1226, 1227); and an indorsee in the latter case cannot be effected even by letters accompanying the bill (Cas. t. Hardw. 74). Nor does the reason of the case in 3 Term R. 80, where the note was negotiated after the term of payment had elapsed, apply to a protest for non-acceptance. Bills are often so protested, and yet are eventually paid. The strongest presumption arising upon a protest for non-acceptance is that the drawee has not effects of the drawer in his hands, at the time of presenting the bill; but, when a note has been protested for nonpayment, the fair presumption is that the drawer is either unable to pay it, or has a legal excuse for not paying it; and the purchaser of the note, under such circumstances has a reasonable warning, and must take it at his peril.

Ingersoll & Lewis, for plaintiffs.

E. Tilghman and Mr. Dallas, for defendants.

Before CHASE, Circuit Justice, and PETERS, District Judge.

CHASE, Circuit Justice. The defense cannot be admitted. There is no rule more perfectly established, there is none which ought to be held more sacred in commercial transactions, than that the blank indorsement of a bill of exchange passes all the interest in the bill, to every indorsee, in succession, discharged from any obligation which might subsist between the original parties, but which does not appear upon the fact of the instrument itself.

PETERS, District Judge. Though I can easily suppose cases of hardship may arise, and though I am disposed, indeed, to think that strong equitable circumstances now exist in favor of the defendants, yet the rule of law is so well established, and, upon general principles, is so beneficial, that I cannot persuade myself, in any degree, to dispense with its operation. I am therefore of opinion that the evidence in support of the defense proposed ought not to be admitted.

Verdict for the plaintiffs.